UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
AT LONDON


CIVIL ACTION NO. 12-75-WOB-CJS

KENNETH WHITE                                                        PETITIONER

v.                        REPORT AND RECOMMENDATION

COOKIE CREWS, WARDEN,
KENTUCKY STATE REFORMATORY                            RESPONDENT

* * * * * * * * * *

Petitioner Kenneth White, *pro se*, has filed a Petition under 28 U.S.C. § 2254 for Writ of

Habeas Corpus, which Petition challenges his conviction for complicity to commit murder.  (R. 1).

The Petition contains eight grounds for relief, including trial court error, prosecutorial misconduct,

and ineffective assistance of counsel.  Petitioner has also requested an evidentiary hearing.  (*Id.* at

18).  The Court has all relevant documents before it, and the matter is now ripe for consideration and

preparation of a Report and Recommendation under 28 U.S.C. § 636(b).  For the reasons set forth

below, it will be **recommended** that White's § 2254 Petition be **denied** and his request for an

evidentiary hearing be **denied as moot.**

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Pulaski County Sheriff Sam Catron was murdered by Danny Shelley on April 13, 2002, while

attending a volunteer fire department's fish fry.[1]  (R. 13-5, at 10-11).  A Pulaski County, Kentucky,

---

[1]The Supreme Court of Kentucky noted the following facts surrounding the murder:
Sometime after 7 p.m., Sheriff Catron left the fish fry to put two cakes he had purchased into
his police cruiser, which was parked in the lot outside.  As he unlocked his car, Sheriff
Catron was shot in the head by a sniper located about 75 yards away.  He fell to the ground
and died at the scene a few minutes later.
(R. 13-5, at 11).  A bystander heard the gunshot and then saw a man (Shelley) with a rifle slung on his back
start a motorcycle, fleeing the scene.  *Id.*  The bystander in his pickup truck  pursued Shelley and eventually

grand jury indicted Petitioner on April 24, 2002, charging him with one count of complicity to commit murder.  (R. 13-2, at 1).  The Commonwealth indicated that it would seek the death penalty because Catron was a sheriff performing his official duties at the time he was killed.  (R. 13-2, at 3).  Petitioner pleaded not guilty.

At trial, the other alleged conspirators to the murder, Jeffrey Morris and Shelley, testified against Petitioner.[2]  Morris was running against Sheriff Catron in the upcoming election for sheriff. (R. 13-5, at 12).  Petitioner was Morris's campaign manager.  (*Id.*).  Morris testified that Petitioner financed his campaign, eventually giving between $25,000 and $30,000.  (*Id.* at 13).  Morris learned during the course of their relationship that Petitioner was heavily involved in the drug trade, and that when Morris tried to remove himself from the campaign financing agreement, Petitioner threatened Morris and his family, claiming that he had already murdered two people in another county.  (*Id.* at 13-14).  Shelley testified that he knew Petitioner from their mutual involvement in drug dealing.  (*Id.* at 13).  According to Shelley, Petitioner financed Morris's campaign, and the three of them had spoken at length about murdering Sheriff Catron.  (*Id.*).  Shelley also said that Petitioner indicated a desire to kill Sheriff Catron, and told Shelley that if he ever crossed him, he would hurt Shelley's family.  (*Id.*).  Both Morris and Shelley testified that Petitioner was an active participant in the conspiracy to kill the sheriff – he purchased the bullets for Shelley's gun, bought a battery for the getaway motorcycle, and mapped out the shooting zone and the escape route. (*Id.* at 14).  The

came upon Shelley, who had crashed his motorcycle.  *Id.*  Shelley was attempting to get back on the bike, and so the bystander struck Shelley with his truck, knocking Shelley off.  *Id.*  The bystander, armed with a tire tool, confronted Shelley, who admitted to shooting the sheriff.  *Id.*  Police soon arrived to apprehend Shelley.  *Id.*

[2]Morris and Shelley had entered into a plea agreement with the prosecution whereby they would testify against Petitioner in exchange for accepting sentences of life imprisonment without the possibility of parole for 25 years.  (R. 13-5, at 13).

2

prosecution had several other witnesses testify that Petitioner was involved with the drug trade.  (R. 13-5, at 14).

Petitioner testified in his own defense (R. 13-5, at 14); however, the jury found Petitioner guilty of complicity to commit murder, and on December 29, 2003, he was sentenced to life imprisonment without the possibility of parole (R. 13-2, at 13).  At the penalty phase of the trial, the jury determined that there was an aggravating circumstance in the matter; Petitioner had intentionally murdered Sheriff Catron, and the sheriff has been "a local public official or sheriff engaged at the time of the act in the lawful performance of his duties."  (R. 13-5, at 14-15).

Petitioner directly appealed his conviction to the Kentucky Supreme Court, alleging the following claims of error:

- The trial court erred by allowing the prosecutor to admit significant evidence of other crimes in violation of Kentucky Rule of Evidence (KRE) 404(b).

- The Commonwealth's evidence was insufficient to establish the aggravating circumstance that the murder was intentional and that Sheriff Catron was engaged in the lawful performance of his official duties at the time of his murder.

- The Commonwealth did not provide sufficient notice to Petitioner as to the evidence of aggravating circumstances that would be offered against him, in violation of Kentucky Revised Statute (KRS) § 532.025(1)(a).

- The trial court erred by denying Petitioner's motion for a continuance.

- The trial court erred by denying a jury instruction on facilitation of murder, a lesser included offense of the complicity charge.

(R. 13-5, at 10).   The Supreme Court of Kentucky affirmed the trial court's judgment on November 23, 2005.[3]  (R. 13-5, at 10).

---

[3]The Kentucky Supreme Court modified its opinion on January 6, 2006, by correcting two typographical errors.  (R. 13-5. at 44).  The modification did not affect the substance of the opinion.  (*Id.*).

On November 15, 2006, Petitioner, *pro se*, filed a post-conviction motion to vacate, set aside, or correct judgment and sentence under Kentucky Rule of Criminal Procedure 11.42 and Kentucky Rule of Civil Procedure 60.02(f) and 60.03.  (R. 13-5, at 45).  That motion contained the following claims:

- The trial court failed to enter a proper order denying White's petition for a change of trial venue.

- The trial court failed to instruct the jury on all degrees of homicide.

- There was prosecutorial misconduct at trial during the guilt/innocence phase.

(*Id.* at 46).  The motion also asserted that defense counsel was ineffective for failing to:

- request that the trial court issue an order denying Petitioner's petition for a change of venue, and then failing to renew that petition and failing to file a writ of prohibition with the Kentucky Court of Appeals;

- request that the trial court instruct the jury on all degrees of homicide;

- object and request a mistrial when the prosecutor offered the jury information during the guilt phase of the trial regarding Petitioner's prior criminal conviction;

- have the assistance of a second defense counsel, since Petitioner was being tried for a capital offense;

- interview and call witnesses on Petitioner's behalf who possessed exculpatory information; and,

- request a mistral when Shelley and Morris testified that Petitioner was involved with two murders in Lincoln County.

(*Id.* at 46-47).  Petitioner further asserted that he suffered substantial prejudice as a result of trial counsel's errors, and requested an evidentiary hearing.  (*Id.* at 47).  The trial court appointed counsel to represent Petitioner for the state habeas action; that appointed counsel added to the motion to vacate a claim that Petitioner was denied the right to effective assistance of counsel, as well as the

right to a fundamentally fair legal proceeding, when trial counsel failed to object to the prosecutor's improper closing argument.  (R. 13-7, at 5).

The Pulaski Circuit Court overruled Petitioner's motion on May 14, 2009.  (R. 13-8, at 8).  Petitioner appealed to the Kentucky Court of Appeals, which affirmed the trial court's decision on February 25, 2011 (R. 13-11, at 6), and denied a rehearing on April 28, 2011 (R. 13-12, at 5).  Petitioner then filed a motion for discretionary review to the Supreme Court of Kentucky (*id.* at 6), which summarily denied the motion on March 14, 2012.  (R. 13-12, at 30).

Petitioner, *pro se*, filed his § 2254 Petition with the federal courts on March 26, 2012, in the Western District of Kentucky.  (R. 1).  The Petition was ordered transferred to the Eastern District of Kentucky on April 5, 2012.  (R. 5).  Respondent filed a Response to the Petition on June 28, 2012 (R. 13), and Petitioner filed a Reply on August 7, 2012 (R. 15). The matter is now ripe for review.

## II.    STANDARD OF REVIEW

Section 2254 petitions are governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. No. 104-132, 110 Stat. 1214.  AEDPA sets forth the substantive standards for granting habeas relief by providing:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  "This is a 'difficult to meet,' *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011), and 'highly deferential standard for evaluating state-court rulings, which demands that

state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002)). Petitioner has the burden of proof. *Id*.

"[T]he 'contrary to' and 'unreasonable application' clauses [have] independent meaning." *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *see also Bell v. Cone*, 535 U.S. 685, 694 (2002). "A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court] cases' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'" *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (quoting *Williams*, 529 U.S. at 405-06).

"[T]he 'unreasonable application' prong of § 2254(d)(1) permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694. But "[i]n order for a federal court to find a state court's application of [Supreme Court] precedent 'unreasonable,' the state court's decision must have been more than incorrect or erroneous. The state court's application must have been 'objectively unreasonable.'" *Wiggins*, 539 U.S. at 520-21 (citations omitted); *see also Williams*, 529 U.S. at 409. Under AEDPA, the question for this Court to answer "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams*, 529 U.S. at 410).

III.    **ANALYSIS**

Petitioner has raised the following eight claims in his § 2254 Petition:

1.      The prosecution improperly introduced a large amount of evidence concerning Petitioner's past drug activities, thus denying Petitioner the right to a reliable sentencing determination.

2.      The trial court erroneously submitted to the jury for consideration that Sheriff Catron was engaged in the lawful performance of his duties at the time he was killed.

3.      The Government failed to give adequate pretrial notice of aggravating evidence.

4.      The trial court improperly denied a continuance to allow Petitioner to obtain an independent evaluation for intellectual disability, and because Petitioner's daughter had died unexpectedly.

5.      The trial court should not have denied Petitioner's motion for a jury instruction on the lesser included offense of facilitation to commit murder.

6.      Defense counsel was constitutionally ineffective by failing to object to the prosecutor's closing argument.

7.      The government misstated the law during closing argument, to Petitioner's substantial prejudice.

8.      Defense counsel was constitutionally ineffective by failing to move for a mistrial when witness Morris testified regarding alleged statements implying Petitioner's involvement in two murders in Lincoln County.

(R. 1).  Petitioner's claims will be considered in the order in which they are presented in his Petition.

A.      **The introduction of drug evidence claim involved the interpretation of state law by the Supreme Court of Kentucky.  This Court may not reexamine that interpretation.  Moreover, the state court's decision was not contrary to clearly established federal law.  Accordingly, this claim fails.**

Petitioner first claims that he was denied a reliable sentencing determination when the prosecution introduced drug evidence that Petitioner argues was not relevant to prove any fact or issue.  (R. 1, at 4).  This claim contains both a state law and a constitutional element.

7

As a general rule, a federal court on § 2254 habeas review should not second guess a state court's decision concerning matters of state law. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("We have repeatedly held that a state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.") (citations omitted).

At Petitioner's trial, at least 9 of the prosecution's 22 witnesses testified that Petitioner was a drug dealer. (R. 13-5, at 15). The prosecutor stated that this testimony was admissible to show Petitioner's motive for participating in the conspiracy to murder Sheriff Catron, under Kentucky Rule of Evidence (KRE) 404(b). (*Id.*). On direct appeal to the Supreme Court of Kentucky, Petitioner argued that the evidence should have been excluded. (*Id.*). The Supreme Court of Kentucky examined KRE 404(b) and relevant case law, applied its interpretation to Petitioner's claim, and rejected his argument. The court noted that there was "clearly a sufficient inferential connection to allow the introduction of the drug evidence under the motive exception [under KRE 404(b)]." (*Id.* at 16). The court also disagreed with Petitioner's claim that, even if the motive evidence were admissible, the prosecutor introduced an impermissibly large volume of evidence. (*See id.* at 18-19). And the court dismissed Petitioner's assertion that proof of a drug enterprise motive was unnecessary because there was proof of another independent motive. (*Id.* at 19). The Supreme Court of Kentucky considered this claim on direct appeal, examining state law in the process. This Court may not second guess the state court's interpretation of state law.

Petitioner has also argued that the introduction of the large amount of drug evidence was so prejudicial as to deny him a reliable sentencing determination, thus also implicating constitutional considerations. As previously discussed, the Supreme Court of Kentucky ruled that the introduction

of the evidence of Petitioner's drug dealing was permissible under state law. *Bey v. Bagley* is applicable here. *See* 500 F.3d 514 (6th Cir. 2007). There, the Ohio Supreme Court similarly allowed the admission of "other acts" evidence under state evidentiary law, and the petitioner in that matter argued that the introduction of the evidence deprived him of a fair trial, given the unduly prejudicial nature of the evidence. *Id.* at 519-20. The Sixth Circuit first indicated that it only needed to consider AEDPA's "contrary to federal law" component, rather than also looking at the "unreasonable application of federal law" prong, because the state court's prejudice inquiry was based entirely on Ohio—not federal—law. *Id.* at 520. The court then remarked, "[petitioner] has not presented, nor have we discovered, any Supreme Court precedent indicating that a state court violates a criminal defendant's due process right when it *properly* admits evidence of the defendant's other bad acts." *Id.* (emphasis in original). Furthermore, "under [Sixth Circuit] precedent, the [state court's] decision that admission of this evidence was proper—combined with our ordinary inability to reconsider a state court's state-law-based decisions—would appear to defeat [petitioner's] claim." *Id.* Lastly, the Ohio evidentiary rule was not contrary to Supreme Court precedent. *Id.* at 521 (noting that states have broad authority over the procedures governing criminal prosecutions).

The Circuit's reasoning in *Bey* also applies here. The Supreme Court of Kentucky interpreted a state law—KRE 404(b)—and determined that the evidence introduced at trial was not unduly prejudicial. The decision rested entirely upon state law grounds. As noted in *Bey*, no case law exists to justify the assertion that the state trial court had violated Petitioner's due process rights by properly admitting the drug dealing evidence. And KRE 404(b) is similar to the Ohio evidentiary rule examined in *Bey*; therefore, it is not contrary to existing Supreme Court precedent, and Petitioner's argument fails.

9

**B.      The aggravating circumstances claim is meritless because it calls for the reexamination of the Supreme Court of Kentucky's interpretation of state law.**

Petitioner's second claim concerns the aggravating circumstance that led to his sentence of life imprisonment without the possibility of parole: that he murdered Sheriff Catron while the sheriff was engaged in the lawful performance of his duties, in violation of KRS § 532.025(2)(a)(7).[4] Petitioner claims that this aggravating circumstance "was invalid and should not have been submitted to the jury for its consideration," because the sheriff was at a fish fry at the time he was murdered. (R. 1, at 5; R. 13-5, at 10, 20-21).  On direct appeal, Petitioner presented this claim solely as a matter of statutory interpretation, that is, he did not raise a constitutional argument.[5]

As previously stated, a federal court on § 2254 habeas review should not reconsider a state court's decision concerning matters of state law.  *Bradshaw*, 546 U.S. at 76 (citations omitted). Here, the Supreme Court of Kentucky examined KRS § 532.025(2)(a)(7), applied the statute to the facts of the case, and determined that the trial court had not erred by submitting the aggravating circumstance to the jury.  (*See* R. 13-5, at 20-31).  The court noted that Sheriff Catron was on call the night he was shot; he had driven his police vehicle to the fish fry; he did not work specifically scheduled shifts; and he had performed police-related functions at similar events.  (*Id.* at 21).  The court then indicated that the statute's "'lawful performance of his duties' language encompasses more than just those specific law enforcement tasks required or allowed by law. . . . it also includes

---

[4]"The offender's act of killing was intentional and the victim was a state or local public official or police officer, sheriff, or deputy sheriff engaged at the time of the act in the lawful performance of his duties . . . ."  KRS § 532.025(2)(a)(7).

[5]Petitioner's claim on direct appeal was that, "[b]ecause Sheriff Sam Catron was not engaged in the lawful performance of his duties at the time he was killed, the only aggravating circumstances found by the jury was invalid and should not have been submitted to the jury for its consideration.  (R. 13-3, at 25 (all capitals in original)).

10

being imminently available to carry out those tasks.  A police officer being 'on duty' easily falls within this latter concept." (*Id.* at 24.).  Therefore, the statutory language was sufficiently broad to cover Sheriff Catron's actions at the time he was murdered, and the aggravating circumstance was properly submitted to the jury.  (*Id.* at 25).  As this Court lacks the authority to reexamine the Supreme Court of Kentucky's interpretation of KRS § 532.025(2)(a)(7), a state law, in the context of a § 2254 proceeding, this claim must be rejected.

> **C.    The failure to give pretrial notice of evidence of aggravating circumstances claim is meritless because a federal court may not reconsider, on habeas review, a state court's interpretation of state law.  Moreover, the Constitution does not grant a general right to discovery in a criminal case.**

Petitioner's third argument is that the prosecutor improperly failed to give pretrial notice of aggravating evidence, in alleged violation of KRS § 532.025(1)(a).  (R. 1, at 6).  Again, a federal court on § 2254 habeas review generally may not reexamine a state court's decision concerning matters of state law.  *Bradshaw*, 546 U.S. at 76 (citations omitted).  As the Supreme Court of Kentucky noted in its opinion on direct appeal, the prosecutor notified Petitioner of his intent to seek the death penalty approximately two years prior to trial.  (R. 13-5, at 31).  The notice included a list of aggravating factors that the prosecutor intended to prove in seeking the death penalty.  (*Id.*).  The prosecutor also supplied Petitioner with a list of potential penalty-phase witnesses, witness resumes, and a questionnaire filled out by a witness.  (*Id.*).  On direct appeal, Petitioner argued that these disclosures were nonetheless insufficient under the statute; however, the state high court rejected this argument, explaining how existing state case law indicated that the prosecutor's disclosures were sufficient.  (*Id.* at 32).  The Supreme Court of Kentucky examined a state statute, applied it to the facts of Petitioner's case, and determined that the prosecutor had complied with the statute.  This Court may not reexamine the state court's interpretation of state law.

Secondly, the Constitution does not recognize a general right to discovery in a criminal matter. *See Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002) (citing *United States v. Presser*, 844 F.2d 1275, 1281 (6th Cir. 1988)). Instead, "all that the Constitution requires, per the due process clause, is that the defendant not be deprived of a fundamentally fair trial." *Id.* (citing same).

Petitioner claimed a violation of a state discovery rule, an alleged infraction that is not cognizable on federal habeas review. Therefore, this claim fails to demonstrate a violation of clearly established federal law, as determined by the Supreme Court.

### D. The Supreme Court of Kentucky's decision to uphold the denial of a continuance was neither contrary to, nor an unreasonable application of clearly established federal law.

Petitioner next argues that the trial court should not have denied him a continuance to seek a medical evaluation as to intellectual disability and because his daughter suddenly passed away prior to trial. (R. 1, at 8). The Sixth Circuit has held that, "[a] trial court's denial of a continuance rises to the level of a constitutional violation only where there is 'an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay.'" *Beuke v. Houk*, 537 F.3d 618, 641 (6th Cir. 2008) (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983) (internal quotation omitted)). Moreover, "[t]o obtain habeas relief, it is not sufficient for the petitioner to show that the trial court arbitrarily denied the continuance request; he 'must also show that the denial of a continuance actually prejudiced his . . . defense.'" *Id.* (citing *Burton v. Renico*, 391 F.3d 764, 772 (6th Cir. 2004)) (omission in original).

Here, Petitioner's trial was set for September 3, 2003. (R. 13-5, at 32). On August 11, 2003, Petitioner sent the prosecutor notice that he intended to introduce evidence of mental illness or insanity at trial. (*Id.*). The trial court, upon the prosecutor's request, ordered that Petitioner be

psychiatrically evaluated at a state facility to determine his competence to stand trial, and the trial court extended the trial date until November 3, 2003, in order to accommodate this testing.[6] (*Id.*). On October 24, 2003, the trial court held a competency hearing at which a psychologist who examined Petitioner testified that Petitioner had scored 78 on an IQ test in 1992, but only 68 on the recent test. (*Id.*). The psychologist indicated that Petitioner's low score on the recent test was due to malingering, and the court determined that Petitioner was competent to stand trial. (*Id.* at 33). Petitioner immediately asked for a continuance to undergo another IQ test, but the court denied that request, noting that Petitioner had ten days until trial to arrange another IQ test. (*Id.*).

Later, on the second day of trial, Petitioner again asked for a continuance, saying that he had been unable to obtain an appointment with a psychologist prior to trial, and that his adult daughter had died suddenly several days before. (R. 13-5, at 33). As a result of his daughter's death, Petitioner claimed that he could not effectively assist his attorney with jury selection. (*Id.*). The trial court denied his request, again noting the role that Petitioner played in the faulty test results, and adding that Petitioner had not been cooperating with counsel. (*Id.* at 33-34). As to the death of Petitioner's daughter, the court scheduled the next day's trial proceedings to begin late in the day, in order that Petitioner might spend time with his family. (*Id.* at 34).

On direct appeal, the Supreme Court of Kentucky first noted that because Petitioner did not receive the death penalty, Petitioner's low IQ was significantly less relevant than if it were a death penalty case. (R. 13-5, at 34). The court did consider Petitioner's IQ, however, since low intelligence was pertinent as a mitigating factor in determining his sentencing. (*Id.*). The high court

---

[6]As explained by the Supreme Court of Kentucky, KRS § 532.140 and § 532.135 state that a person who has an IQ score of 70 or below is classified as "mentally retarded," and accordingly may not be sentenced to death. (R. 13-5, at 33 n. 6).

stated that the trial court had allowed Petitioner to undergo a psychological evaluation at state expense, and permitted Petitioner to attempt to schedule another examination prior to trial. (*Id.* at 35-36). It then stated that the trial court was not required to grant a continuance as a matter of due process, and then thoroughly analyzed the trial court's ruling using a 7-factor balancing test.[7] (*Id.* at 34-35, 36-39). The balancing test weighed in favor of the trial court's decision to deny the continuance. (*Id.* at 39).

The Supreme Court of Kentucky's decision to affirm the trial court's denial of the continuance was neither contrary to, nor an unreasonable application of clearly established federal law. The court carefully weighed numerous factors and determined that the trial court properly denied the motion. Of particular import were the facts that Petitioner waited over a year after his indictment to request a psychological evaluation—finally requesting an examination only a month before trial—and Petitioner's malingering, which resulted in a low IQ score. (*See* R. 13-5, at 39). Moreover, the court noted that it would be entirely speculative to assume that Petitioner would be able to present his low IQ score to the jury after another IQ test, especially since the court already had a reliable IQ score from 1992 which placed Petitioner in the "competent to stand trial" category. (*Id.*). Thus, Petitioner was not prejudiced by the denial of the continuance. (*Id.*). And Petitioner was not prejudiced at trial by the death of his daughter, as the trial court indicated that Petitioner had assisted in jury selection and did not appear to have any difficulty with that process. (*Id.*).

**E.     The Supreme Court of Kentucky properly denied a jury instruction on the lesser included offense of criminal facilitation.**

---

[7]"[L]ength of delay; previous continuances; inconvenience to litigants, witnesses, counsel and the court; whether the delay is purposeful or is caused by the accused; availability of other competent counsel; complexity of the case; and whether denying the continuance will lead to identifiable prejudice." *Snodgrass v. Commonwealth*, 814 S.W.2d 579, 581 (Ky. 1991), *overruled in part and on other grounds by Lawson v. Commonwealth*, 53 S.W.3d 534 (Ky. 2001).

14

Petitioner claims that the trial court erred by denying his motion for a jury instruction on the lesser included offense of facilitation to commit murder.  (R. 1, at 9).  "[D]ue process entitles a criminal defendant to an instruction on a lesser included offense '*only* when the evidence warrants such an instruction.'"  *Allen v. Morris*, 845 F.2d 610, 617 (6th Cir. 1988) (quoting *Hopper v. Evans,* 456 U.S. 605, 612 (1982)) (emphasis in original); *see also Beck v. Alabama*, 447 U.S. 625, 637 (1980).  A state may decide what constitutes facilitation under its laws.  And the burden is on the Petitioner to rebut, by clear and convincing evidence, the presumption that the Supreme Court of Kentucky's factual determinations are correct.  *See* 28 U.S.C. § 2254(e)(1).

On direct appeal, the Supreme Court of Kentucky noted a distinction between the Kentucky complicity and facilitation statutes, and that the distinction was based on the defendant's mental state at the time of the crime.  (R. 13-5, at 39-40).  "An instruction on facilitation as a lesser-included offense of complicity 'is appropriate if and only if on the given evidence a reasonable juror could entertain reasonable doubt of the defendant's guilt of the greater charge, but believe beyond a reasonable doubt that the defendant is guilty of the lesser offense."  (*Id.* at 40 (quoting *Skinner v. Commonwealth*, 864 S.W.2d 290, 298 (Ky. 1993))).  In addition, "'[a]n instruction on a lesser included offense requiring a different mental state from the primary offense is unwarranted unless there is evidence supporting the existence of both mental states.'"  (*Id.* at 41 (quoting *Taylor v. Commonwealth*, 995 S.W.2d 355, 362 (Ky. 1999))).  Bearing those standards in mind, the high court determined that under the facts of the case, Petitioner was either an active participant in the conspiracy—therefore guilty of complicity—or a mere bystander who was innocent of any crime. The full analysis is as follows:

> [Petitioner] argues that . . . he was entitled to the facilitation instruction
> because it was possible that the jury could have believed he provided Shelley with

the "means and opportunity" to murder Sheriff Catron and that he knew Shelley was going to kill Sheriff Catron, but that he did not intend for Shelley to commit the murder. He claims that the jury could have believed the testimony of Shelley and Morris that he helped Shelley procure and prepare the getaway motorcycle, he bought the shells used in the murder, and that he suggested the place from which Shelley did the shooting, but might not have believed their testimony that he was an active participant in planning the murder.

While "we have held that the jury may believe all of [the] testimony of either or any one of [the] witnesses in whole or in part," we also have held that "[a]n instruction on a lesser included offense requiring a different mental state from the primary offense is unwarranted unless there is evidence supporting the existence of both mental states." That the jury could have disbelieved part of the testimony of Shelley and Morris does not constitute evidence of the lesser mental state required for a facilitation instruction. Rather, such disbelief would support a finding that [Petitioner] was innocent, especially since the only other proof as to [Petitioner's] mental state was his own testimony that he had nothing to do with the crime and was merely present when the various tools used in the shooting were obtained.

[Petitioner's] theory would require the jury to split the difference between his testimony and that of Morris and Shelly [sic] to find the existence of a mental state for which there was no affirmative evidence. Such an approach would require that a facilitation instruction be given in every case where the defendant is charged with complicity. But such an approach is improper and a lesser-included offense instruction is available only when supported by the evidence. The evidence presented at trial supported only two theories: that [Petitioner] was an active participant in planning the crime and intended that it be carried out, or that he was an innocent bystander who happened to be present when some of the instruments used in the crime were acquired. There was no evidence of a middle-ground violation of the facilitation statute. "The jury is required to decide a criminal case on the evidence as presented or reasonably deducible therefrom, not on imaginary scenarios." Therefore, we conclude that the trial court was correct in refusing [Petitioner's] request for a facilitation instruction.

(*Id.* at 41-42) (citations omitted).

As explained by the Supreme Court of Kentucky, a charge of facilitation simply did not exist under the facts of the case. Petitioner has not provided clear and convincing evidence to rebut the presumption of correctness as to the Supreme Court of Kentucky's factual determination. The high

court's factual determination was reasonable, and was neither contrary to, nor an unreasonable application of clearly established federal law.  Therefore, this claim is meritless.

F.     **The Kentucky Court of Appeals appropriately applied the *Strickland v. Washington* standard in assessing whether defense counsel was ineffective for failing to object to the prosecutor's closing argument.**

Petitioner claims that defense counsel performed ineffectively by failing to object to the prosecutor's closing argument.  (R. 1, at 10).  Petitioner would be entitled to federal habeas relief on this issue only if the Kentucky court's decision on the issue was "contrary to, or involved an unreasonable application of clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d).  Effective representation during a criminal proceeding is measured by the two-pronged test established in *Strickland v. Washington*, 466 U.S. 668 (1984).  First, a defendant must demonstrate that counsel's performance was deficient.  *Id.* at 687.  "This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  The Court expanded on this concept: "in light of all the circumstances, the identified acts or omissions [must be] outside the wide range of professionally competent assistance." *Id.* at 690.  Second, defense counsel's errors must have prejudiced the case.  *Id.* at 687.  Defendant must show that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable," *id.*, and that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694.  The *Strickland* standard is highly deferential to defense counsel, and there is a strong presumption of adequate representation.  *See Titlow v. Burt*, 680 F.3d 577, 587 (6th Cir. 2012) (citing *Strickland*, 466 U.S. at 690); *see also Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (warning that courts should not "'indulge in hindsight, but must

17

evaluate the reasonableness of counsel's performance within the context of the circumstances at the time of the alleged errors'") (quoting *McQueen v. Scroggy*, 99 F.3d 1302, 1311 (6th Cir. 1996), *overruled on other grounds by In re Abdur'Rahman*, 392 F.3d 174 (6th Cir. 2004) (en banc)).

Moreover, Petitioner faces an exceedingly high standard on federal review of a state habeas proceeding as to ineffective assistance of counsel, because

> [a]sking whether the state court's application of *Strickland*'s standard was unreasonable is different from asking whether defense counsel's performance fell below that standard. Under AEDPA, a state court must be granted a deference and latitude that are not in operation in a case involving direct review under *Strickland*. A state court's determination that a claim lacks merit precludes federal habeas relief so long as "fair-minded jurists could disagree" on the correctness of that decision.

*Harrington*, 131 S. Ct. at 778 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Petitioner's ineffective assistance of counsel claim states that counsel was deficient for failing to object to what the prosecutor said during his closing argument. The Supreme Court of Kentucky described the prosecutor's conduct as follows:

> Somewhat more troubling is the fact that the prosecutor spent a significant portion of his closing argument incorrectly arguing that Sheriff Catron's status as a public official was a separate aggravator and that the jury need not find the existence of the duty condition if it concluded that Sheriff Catron was, indeed, a public official. Although [Petitioner] had objected to this interpretation of the law during the conference on the penalty phase jury instructions, this claim simply was not preserved because [Petitioner] did not object to the prosecutor's closing argument. And, . . . the trial court clearly contemplated that the instruction in question presented a single aggravating favor. Though it is possible [that Petitioner's] failure to object to the prosecutor's closing argument was the result of a misunderstanding of the trial court's inclusion of the "public official" language in its instruction, we cannot say that this is sufficient to preserve the error. Having failed to register any objection, [Petitioner] may not retrospectively benefit from this error.

(R. 13-5, at 31). At the evidentiary hearing, defense counsel did not provide a reason for not objecting. (R. 1-3, at 4). Regardless, the Kentucky Court of Appeals determined that defense counsel's actions did not amount to ineffective assistance because the outcome of the case would

18

not have changed had defense counsel objected to the prosecutor's closing argument.  (*Id.*).  The jury received the correct instructions as to the aggravating factor ("duty condition"), and based on that instruction, decided that the aggravating factor existed.  (*Id.*).  The Kentucky Court of Appeals properly applied the *Strickland* test, in accordance with § 2254(d)(1), noting that even if defense counsel's performance was deficient, Petitioner had not demonstrated that his case had been prejudiced as a result.  Therefore, this claim fails.

> **G.     The Kentucky Court of Appeals properly determined that Petitioner was not deprived of due process when the prosecutor misstated the law during closing argument.**

Petitioner's seventh claim concerns alleged misstatements of the law made by the prosecutor during closing argument at trial, which Petitioner considers to be prosecutorial misconduct.  (R. 1, at 12).  The Kentucky Court of Appeals provided the relevant portions of the prosecutor's closing argument in its state habeas opinion:

> . . . "Sam Catron was a local public official" (quoting from instructions.)  He was sheriff.  He was a local public official.  You heard it from Mr. Arnold.  He was a public official.  "**Or**, *sheriff engaged in the lawful performance of his duties*." [(quoting from instructions) (emphasis in original).]  That's why I brought these witnesses in here to tell you about being a public official, being elected.  You have to go out there to fish fries, you have to get out in public, you have to meet people.  He's out there as a local public official.  He's also out there as sheriff.  He's in uniform.  He's got his car, he's got his radio on.  He's already to go 10/8 at any time.  He was in the lawful performance of his duties.  You heard from the sheriff and other expert witnesses to tell you that's the lawful performance of his duties.  For us to say . . . You can find that aggravator. [(ellipsis in original).]  He was in the lawful performance of his duties as sheriff or public official.  He was.  That was the lawful performance of his duties.
>
> . . . He was out there campaigning, trying to keep his job as sheriff or to keep his job as a local public official, and he was gunned down for that simple reason.
>
> I think there's actually three aggravators that we've proven to you beyond a reasonable doubt[.]

. . . you would write in here "Sheriff engaged in the performance of his duties, local public official, it was done for profit" if that's what you want the sentence to be.

(R. 1-3, at 5 (quoting R. 13-9, at 16-17 (Petitioner's brief on state habeas appeal)) (emphases and alterations in original)).

The prosecutor and the trial court disagreed over the aggravating circumstances language of KRS § 532.025(2)(a)(7), and both the trial court and later the Supreme Court of Kentucky indicated that the prosecutor's interpretation was incorrect. (*See* R. 1-3, at 4-5). The Kentucky Supreme Court stated, however, that the statute in question was ambiguous, and that as a matter of first impression, the prosecutor's interpretation was incorrect. (*See* R. 13-5, at 25-31). The Kentucky Court of Appeals held that the prosecutor had not committed prosecutorial misconduct. (R. 1-3, at 6). The appellate court emphasized that closing arguments must be considered as a whole, and that a prosecutor's actions would only amount to misconduct, under Kentucky case law, if there was not overwhelming evidence of defendant's guilt, defense counsel objected, and the trial court did not remedy the error with an admonition. (*Id.* at 6 (citing *Miller v. Commonwealth*, 283 S.W.3d 690 (Ky. 2009))). Under this standard, the appellate court rejected Petitioner's claim. (*Id.*).

The Supreme Court of Kentucky examined the statute as a matter of first impression, and determined that the prosecutor's interpretation was incorrect. Accordingly, the prosecutor's argument was not contrary to existing state appellate case law; rather, the prosecutor used the language of the statute as the basis of his argument. The court of appeals stated that the prosecutor's actions did not rise to prosecutorial misconduct, and the appellate court's decision was neither contrary to, nor an unreasonable application of federal law as determined by the Supreme Court of the United States. It should also be reemphasized that while the prosecutor misstated the law, the

jury received proper instructions regarding the aggravating circumstance. Accordingly, this claim lacks merit.

### H.  The Kentucky Court of Appeals reasonably denied Petitioner's ineffective assistance of counsel claim regarding failure to ask for a mistrial.

Petitioner's eighth claim is that defense counsel was ineffective for failing to ask for a mistrial when witness Morris testified that Petitioner told him that Petitioner was involved with two murders in Lincoln County, Kentucky. (R. 1, at 14). The *Strickland* and *Harrington* standards, previously discussed, are applicable to this claim.

At trial, the prosecutor filed a notice with the trial court that he intended to introduce evidence, under KRE 404(c),[8] that Petitioner had told Shelley and Morris that he was involved with the Lincoln County murders. (R. 1-3, at 6). Defense counsel filed a motion *in limine* to prevent the prosecution from offering this testimony into evidence, arguing that the introduction of this evidence would be in violation of KRE 404(b).[9] (*Id.*). The trial court denied Petitioner's motion *in limine* on October 23, 2003, but indicated that the court would rule on specific motions if the evidence were irrelevant or outside the bounds of KRE 404(b). (*Id.* at 6-7).

Morris testified that Petitioner had directed him to watch the news when it covered the murder of two teenagers in Lincoln County. (R. 1-3, at 7). Morris added that Petitioner had implied he would murder Morris if he betrayed him. (*Id.*). The trial court then instructed the jury as follows:

> Ladies and gentlemen of the jury, the statement that two teenagers turned up dead, the Court has admitted that for the sole purpose of letting this witness testify that the defendant made a statement. I'm going to further inform you that I have been

---

[8]This evidentiary rule is directed to the notice requirement for the introduction of character evidence in a criminal case.

[9]"Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith [subject to several exceptions]." KRE 404(b).

informed that there is no evidence at this time that [Petitioner] had anything to do with this matter.

(*Id.* (citation omitted)).   The court of appeals indicated that this admonition was sufficient to establish the basis and scope of the testimony, and adequately served to warn the jurors not to assume that Petitioner was responsible for the Lincoln County murders.  (R. 1-3, at 7).  Accordingly, the court of appeals rejected Petitioner's ineffective assistance claim.  (*Id.*).

The appellate court's ruling was not contrary to, nor an unreasonable application of federal law.  Defense counsel made a motion *in limine* to exclude the testimony of Morris and Shelley.  The trial court denied the motion, stating that the testimony was admissible for the limited purpose of showing Morris's reaction to Petitioner's statements.  The trial court properly admonished the jury regarding the limited purpose of the testimony, and made clear that the jury was not to assume that Petitioner had killed the two teenagers.  Defense counsel lacked an adequate basis to request a mistrial under these circumstances.  Therefore, this claim is meritless.

## IV.   PETITIONER'S REQUEST FOR AN EVIDENTIARY HEARING

Petitioner has also asked the Court to order an evidentiary hearing.[10] (R. 1, at 18).  "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief."  *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."  *Id.*

---

[10]The Petition states the following: "[P]etitioner asks that the Court grant the following relief . . . order evidentiary . . . ."  (R. 1, at 18).  The Court construes this language to mean that Petitioner requests an evidentiary hearing.

The Court has concluded that Petitioner is not entitled to relief based on the information contained in the record. Therefore, an evidentiary hearing is not required, and it is recommended that Petitioner's request be denied as moot.

## V.      CERTIFICATE OF APPEALABILITY

Under Rule 11 of the Federal Rules Governing Section 2254 Proceedings, effective December 1, 2009, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. A certificate may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). The Supreme Court fully explained the requirement associated with a "substantial showing of the denial of a constitutional right" in *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). In cases where a district court has rejected a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "When a district court denies a habeas petition on procedural grounds without reaching the petitioner's underlying constitutional claim, a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists would not debate the denial of Petitioner's § 2254 motion or conclude that the issues presented are adequate to deserve encouragement to proceed further. *See Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack*, 529 U.S. at 484). Accordingly, it will be recommended that a certificate of appealability be denied upon the District Court's entry of its final order in this matter.

23

## VI.    CONCLUSION AND RECOMMENDATION

For the reasons stated above, **it is recommended** that:

(1)    White's Petition under § 2254 for Writ of Habeas Corpus (R. 1) be **denied;**

(2)    Petitioner's request for an evidentiary hearing be **denied as moot;**

(3)    A certificate of appealability be **denied** by the District Court in conjunction with the Court's entry of its final order in this matter; and,

(4)    This action be **stricken** from the active docket of this Court.

Specific objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service or further appeal is waived. Fed. R. Civ. P. 72(b)(2); *Thomas v. Arn*, 728 F.2d 813 (6th Cir. 1984), *aff'd,* 474 U.S. 140, 155 (1985).  A general objection that does not "specify the issues of contention" is not sufficient to satisfy the requirement of a written and specific objection.  *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir. 1995) (citing *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508-09 (6th Cir. 1991)).  Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal.  *Howard*, 932 F.2d at 509.  A party may respond to another party's objections 14 days of being served with a copy of those objections. Fed. R. Civ. P. 72(b)(2).

Dated this 2nd day of December, 2012.



Signed By:

*Candace J. Smith*

**United States Magistrate Judge**

G:\DATA\habeas petitions\2254 General\12-75 white R&R v. 2.wpd